UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**RUDY'S PERFORMANCE PARTS, INC.,**<br>dba **RUDY'S DIESEL PERFORMANCE,**<br>and **RUDY'S DIESEL PERFORMANCE AND OFFROAD,**<br><br>**Defendant.** | Case No: 1:24-CR-00336-TNM |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, the United States Attorney for the District of Columbia and the Assistant Attorney General of the Environment and Natural Resources Division of the United States Department of Justice, respectfully submits the following Sentencing Memorandum in the above-captioned matter. For the reasons below, the government respectfully requests this Court sentence the Defendant, Rudy's Performance Parts, Inc., doing business as Rudy's Diesel Performance and Rudy's Diesel Performance and Offroad (Rudy's), to a sentence consistent with the plea agreement, including a fine of $2.4 million and imposition of a special condition of probation. Such a sentence strikes the appropriate balance based on relevant sentencing considerations.

### I.   Factual Background

The factual basis for the guilty plea is set forth in the Statement of Offense (SOO), which is agreed to by the parties.

Rudy's was a manufacturer, distributor, and seller of aftermarket automotive and truck parts. SOO ¶ 1. Among its products, Rudy's sold defeat devices known as "delete tuners," which

1

are used to disable a diesel truck's emissions control system. SOO ¶¶ 2, 6. More specifically, delete tuners are used as part of a process known as "deleting" a vehicle, which involves two steps: first, removing or disabling a vehicle's emissions control components; and second, using the tuner to upload software (known as a "delete tune") to the vehicle to prevent the vehicle from detecting that the emissions control components were removed or disabled. SOO ¶¶ 3-6; *see also* Information (ECF No. 1) ¶ 13. The second step of deleting a vehicle involves tampering with the vehicle's on-board diagnostic system (OBD), which monitors the operation of the emissions control system. SOO ¶¶ 3-4. During the conspiracy, the Defendant and others created delete tuners that were imitations of models originally manufactured by another company. SOO ¶ 11-15. In total, the Defendant sold about 43,900 of these tuners, generating tens of millions in revenue. SOO ¶ 15.

In 2014, before the charged conspiracy, Rudy's top selling product was the Mini Maxx delete tuner, which was originally manufactured and sold to Rudy's by Company A. SOO ¶ 7. Rudy's also sold the XRT Pro, another Company A delete tuner. SOO ¶ 7. In about 2014, Company A stopped making these tuners after the U.S. EPA issued a Notice of Violation (NOV) to Company A in 2012. SOO ¶ 8. By 2015, the president of Rudy's knew of the NOV and knew that Company A had stopped making the Mini Maxx and XRT Pro tuners. SOO ¶ 8.

Yet by May 2015, Rudy's through its president began laying the foundation for the criminal conspiracy. SOO ¶10. Rudy's asked Person 1, a delete tune writer, to make imitation Company A delete tuners. SOO ¶ 10. From May 2015 into July 2015, Rudy's and Person 1 discussed terms of a possible agreement where Person 1 would make the imitation tuners. SOO ¶ 10.

By July 20, 2015, an agreement was reached. SOO ¶ 11. Rudy's provided Person 1 with tuners manufactured by a third-party (Company B), and Person 1 and Person 1's companies

converted those Company B tuners into imitation Company A tuners. SOO ¶ 11. In exchange, Rudy's paid Person 1 and Person 1's company between approximately $100 and $109 for each converted tuner. SOO ¶ 11. In August 2015, Person 1 informed Rudy's that the U.S. EPA had inspected Person 1's business location. SOO ¶ 12. After that, Person 1 and Rudy's president discussed the U.S. EPA civil investigation into Person 1's activities. SOO ¶ 12. Eventually, Person 1 informed Rudy's that Person 1 would stop making the imitation tuners. SOO ¶ 12. In total, from July 2015 to December 2016, Person 1 converted about 20,000 imitation tuners for Rudy's, and in exchange, Rudy's paid Person 1 about $2 million. SOO ¶ 12.

Within a few months of Person 1 stopping production, Rudy's reached an agreement with another company (Company C) to buy a laptop computer with software and files to convert tuners into Company A tuners. SOO ¶ 13. Rudy's paid $850,000 for the laptop. SOO ¶ 13. Then, Rudy's used the laptop in-house to convert Company B tuners into Company A tuners. SOO ¶ 14. Continuing through July 2018, Rudy's manufactured, marketed, and sold about 23,900 imitation Company A tuners. SOO ¶ 14.

Collectively, Rudy's generated about $33 million in revenue from the sales of tuners converted both by Person 1 and in-house at Rudy's. SOO ¶ 15. For purposes of a criminal fine, the parties stipulate that Rudy's derived a gross pecuniary gain of at least $1.2 million from the sales of tuners that were used to tamper with OBDs on vehicles driven on public roads. SOO ¶ 15.

This case is related to *United States v. Aaron Lucas Roskin Rudolf*, No. 1:23-cr-391-TNM, in which this Court accepted a plea of guilty from Aaron Rudolf, the president of Rudy's, to conspiracy to violate the Clean Air Act, in violation of 18 U.S.C. § 371. Rudolf and others agreed to have Rudy's employees remove or disable emissions control components, and tamper with the OBDs, on approximately 300 diesel trucks. Statement of Offense at ¶ 6, *Rudolf*, No. 1:23-cr-391-

TNM (D.D.C. Nov. 29, 2023), ECF No. 9. This Court sentenced Mr. Rudolf to three years of probation, a $600,000 fine, and 60 hours of community service. Judgment in a Criminal Case, *Rudolf*, No. 1:23-cr-391-TNM (D.D.C. April 15, 2024), ECF No. 22.

## II.     Charge and Plea Agreement

The government charged the Defendant in an Information (ECF No. 1), filed July 23, 2024, with one count of conspiracy to violate the Clean Air Act (CAA), 42 U.S.C. § 7413(c)(2)(C), in violation of 18 U.S.C. § 371. The Defendant faces a maximum sentence of a fine of $500,000 or twice the gross gain or loss from the offense (pursuant to 18 U.S.C. § 3571), a five-year period of organizational probation, and discretionary restitution (pursuant to 18 U.S.C. § 3663(a)).

The Defendant, through an authorized representative, has entered into a plea agreement with the government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). As relevant to sentencing, key terms of the plea agreement are as follows:

1. The Defendant will plead guilty to Count One of the Information (¶ 1);
2. The Defendant will pay a special assessment of $400 (¶ 1);
3. The parties jointly recommend a criminal fine of $2.4 million, to be paid in three installments: (1) $800,000 within 30 days of sentencing; (2) $800,000 within 18 months of sentencing; and (3) $800,000 within 35 months of sentencing (¶ 4);
4. The Defendant agrees to a three-year period of organizational probation; however, if the Defendant has failed to pay a fine or any other financial obligations, the Defendant agrees it will remain on probation beyond the three-year period until all payments are made, or as may be ordered by the Court. Defendant further agrees that probation will not be terminated prior to the Defendant fully paying all financial obligations, including any fine or restitution ordered by the Court (¶ 1);

5. As a special condition of probation, the Defendant shall be required to fully comply with the civil Consent Decree entered into by the defendant and the Department of Justice, attached to the plea agreement as Exhibit A (¶ 1); and

6. The government agrees that restitution is not appropriate in this case (¶ 9).

### III. Application of Factors Under 18 U.S.C. § 3553(a)

The sentence proposed by the parties is appropriate considering the factors set forth in 18 U.S.C. § 3553(a).

#### a. Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))

The Defendant's conduct spanned multiple years and involved the manufacture and sale of thousands of imitation Company A delete tuners that Rudy's advertised and sold as Company A products. SOO ¶¶ 11, 14. One such tuner model (the Mini Maxx) was Rudy's top selling product through much of the conspiracy. SOO ¶ 7. Although there are no identified victims in this case, this was not a crime without consequence. Rather, the Defendant's conduct enabled the removal of emissions control components, which causes increased emissions of hazardous compounds that negatively impact human health and the environment. SOO ¶¶ 2-6,; Information ¶ 12.

In enacting the CAA, Congress found "that the growth in the amount and complexity of air pollution brought about by . . . the increasing use of motor vehicles [among other things], has resulted in mounting dangers to the public health and welfare . . . ." 42 U.S.C. § 7401(a)(2). Congress declared that a purpose of the CAA was "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare . . . ." 42 U.S.C. § 7401(b)(1).

Under the CAA, vehicle and engine manufacturers are required to install OBDs on motor vehicles. *See* 42 U.S.C. § 7521(m)(1); 40 C.F.R. §§ 86.010-18 and 86.1806-05; Information ¶ 7.

Because an OBD is a monitoring device or method required to be installed and maintained under the CAA, it is a crime to tamper with an OBD, in violation of 42 U.S.C. § 7413(c)(2)(C).

The OBD is vital to ensuring motor vehicles do not emit excess pollutants into the air. Vehicle manufacturers install emissions controls in vehicles to meet emission standards required under the CAA. SOO ¶ 3. Emissions control systems for diesel vehicles include components such as the following: the exhaust gas recirculation unit, which controls emissions of nitrogen oxides (NOx); the diesel oxidation catalyst, which controls emissions of carbon monoxide (CO), particulate matter (PM), and non-methane hydrocarbons (NMHC); the selective catalytic reduction unit, which controls NOx; and the diesel particulate filter, which traps PM. Information ¶ 8; *see also* SOO ¶ 3. The OBD monitors the operation of the vehicle's emissions control system. SOO ¶ 3. If emissions control components are removed or disabled, a normally functioning OBD will trigger a malfunction indicator light on the vehicle's dashboard and record a diagnostic trouble code in the vehicle's computer. SOO ¶ 3. The OBD also may cause the vehicle to go into "limp mode," which reduces the maximum speed of the vehicle until the emissions system is repaired. Information ¶ 9; *see also* SOO ¶ 3.

The process of "deleting" a truck, which involves tampering with the OBD, causes the truck's emissions (including NOx, CO, PM, and NMHC) to increase significantly. SOO ¶ 4-5. Air pollution from diesel pickup trucks can increase tens or even hundreds of times, depending on the pollutant, when the emissions controls are removed.[1] Additionally, the U.S. EPA identified diesel exhaust as a mobile source air toxic under the CAA, 42 U.S.C. § 7521(*l*)(1), because it poses cancer

---

[1] U.S. Envtl. Prot. Agency, *Tampered Diesel Pickup Trucks: A Review of Aggregated Evidence from EPA Civil Enforcement Investigations* (2020), at 3-4 of 21, https://www.epa.gov/sites/default/files/2021-01/documents/epaaedletterreportontampereddieselpickups.pdf [hereinafter *Tampered Diesel Pickup Trucks*].

and noncancer health risks. 66 Fed. Reg. 17230 (Mar. 29, 2001); *see also* SOO ¶ 5. For example, diesel exhaust exposure "can lead to serious health conditions like asthma and respiratory illnesses and can worsen existing heart and lung disease, especially in children and the elderly."[2]

Rudy's derived pecuniary gain by selling imitation delete tuners that tampered with OBDs on vehicles driven on public roadways. SOO ¶ 15. Rudy's did so after its president knew that the U.S. EPA had issued an NOV to Company A and that Company A had stopped manufacturing the Mini Maxx and XRT Pro tuners. SOO ¶ 8.

### b. History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

Rudy's has no prior criminal history of which the government is aware. The Defendant is the subject of a civil enforcement suit alleging civil violations of the CAA[3] occurring from 2014 into 2019. Complaint at 23-38, *United States v. Rudy's Performance Parts, Inc., et al.*, No. 22-cv-495 (M.D.N.C. June 29, 2022), ECF No. 1. On July 29, 2024, a proposed Consent Decree (CD), resolving the claims in the Complaint and signed by the parties, was filed in the matter. Notice of Lodging of Consent Decree, *Rudy's Performance Parts*, No. 22-cv-495 (M.D.N.C. July 29, 2024), ECF No. 80 & 80-1. The CD requires Rudy's (and co-defendant Aaron Rudolf) to pay a civil penalty of $7 million and to comply with its terms. The CD provides for possible adjustment of the civil penalty so that the defendants collectively pay a total of $10 million in fines/penalties between the civil and criminal cases:

> Because this settlement is based on Defendants' collective limited ability to pay, if the courts in the related criminal proceedings against the Defendants for alleged violations of the Clean Air Act prior to July 1, 2019, including *United States of America v. Aaron Lucas Roskin Rudolf*, No. 23-CR-000391 (D.D.C.), impose

---

[2] U.S. Envtl. Prot. Agency, *Learn About Impacts of Diesel Exhaust and the Diesel Emissions Reduction Act (DERA)*, https://www.epa.gov/dera/learn-about-impacts-diesel-exhaust-and-diesel-emissions-reduction-act-dera (last visited August 30, 2024).
[3] The civil Complaint alleges violations of sections 203(a)(3)(A) and (B), and 203(a)(2)(A) of the CAA (*i.e.*, 42 U.S.C. § 7522(a)(3)(A) and (B), and 42 U.S.C. § 7522(a)(2)(A), respectively).

criminal fines on Defendants that collectively exceed or are below $3,000,000, the civil penalty payments in Paragraph 9.a.ii-iii above shall be reduced or raised by the difference between the total of the federal criminal fines amount and $3,000,000.

Proposed Consent Decree at 13, *Rudy's Performance Parts*, No. 22-cv-495 (M.D.N.C. July 29, 2024), ECF No. 80-1.

This Court, in the related criminal matter of *United States v. Aaron Lucas Roskin Rudolf*, sentenced Mr. Rudolf to a criminal fine of $600,000, among other things. Judgment in a Criminal Case, *Rudolf*, No. 1:23-cr-391-TNM (D.D.C. April 15, 2024), ECF No. 22. Thus, if the Court imposes the proposed $2.4 million fine against Rudy's, it will bring the total fines in both criminal matters to $3 million.

### c. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Afford Adequate Deterrence (18 U.S.C. § 3553(a)(2)(A)-(C))

The use of aftermarket defeat devices, such as those at the center of this conspiracy, is a substantial source of excess air pollution. The U.S. EPA has estimated that emissions controls were removed from more than 550,000 diesel pickup trucks nationally between 2009 and 2020. *Tampered Diesel Pickup Trucks*, *supra* note 1, at 1 of 21. "These tampered trucks constitute approximately 15 percent of the national population of diesel trucks that were originally certified with emissions controls." *Id.* Consequently, "more than 570,000 tons of excess oxides of nitrogen (NOx) and 5,000 tons of particulate matter (PM) will be emitted by these tampered trucks over the lifetime of the vehicles." *Id.* Additionally, "due to their severe excess NOx emissions, these trucks have an air quality impact equivalent to adding more than 9 million additional (compliant, non-tampered) diesel pickup trucks to our roads." *Id.* As noted, diesel exhaust poses both cancer and noncancer health risks. SOO ¶ 5.

The U.S. EPA "has found numerous companies and individuals that have manufactured, sold, and installed both hardware and software specifically designed to defeat required emissions controls on motor vehicles." *Tampered Diesel Pickup Trucks*, *supra* note 1, at 3 of 21. Also, "[m]any retailers are online operations that sell nationwide, and some portions of the aftermarket industry operate in a secretive manner such that the nature and extent of their operations are not reflected in their business records." *Id.* at 6 of 21. Given this landscape, appropriate sentences in defeat device cases can provide deterrent value.

The proposed sentence is consistent with the § 3553(a) factors addressing the seriousness of the offense, respect for the law, and deterrence. The tuners Rudy's sold tampered with vehicles' OBDs, which is prohibited under the CAA's criminal provisions. After the Defendant could no longer obtain Mini Maxx and XRT Pro tuners from their original manufacturer due to U.S. EPA enforcement, Rudy's conspired with Person 1 to create imitation Company A tuners. When Person 1—who Rudy's knew was the subject of a civil U.S. EPA investigation—stopped making the imitation tuners, Rudy's moved production in-house. And Rudy's did so after the U.S. EPA sent Rudy's a request for information in December 2016 about its products, including whether they affected a vehicle's OBD. *See* Information ¶ 4. Taken together, the Defendant's actions allowed Rudy's to keep the Mini Maxx (in imitation form) as the Defendant's top selling product, prioritizing profits over environmental compliance.

The proposed $2.4 million fine reflects the extent of the criminal conduct, including gross pecuniary gain, and provides for general deterrence. The proposed special condition of probation to comply with the CD will help ensure that the Defendant does not commit future violations. For example, the CD includes the following requirements, among others:

9

1. That Defendant cease manufacturing, selling, distributing, and installing certain subject products, including delete tuners;

2. That Defendant will delete or destroy subject products in its possession or control;

3. That Defendant cease offering or making available technical support or information pertaining to installation, manufacture, sale, use, or repair of subject products;

4. That Defendant shall not sell, convey, or otherwise transfer the design, source code, technology, manufacturing process, or other intellectual property associated with subject products (except under limited circumstances);

5. That Defendant revise marketing materials;

6. That Defendant conduct Clean Air Act compliance training for employees; and

7. That Defendant comply with certain reporting requirements, including an annual report.

Proposed Consent Decree at ¶¶ 14-23, *Rudy's Performance Parts*, No. 22-cv-495 (M.D.N.C. July 29, 2024), ECF No. 80-1.

## IV.   Conclusion

For the reasons set forth above, the government requests that this Court sentence the Defendant consistent with the terms of the plea agreement.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:   */s/ Jennifer Leigh Blackwell*
Jennifer Leigh Blackwell
Assistant United States Attorney
D.C. Bar No. 481097
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-7068

        TODD KIM
        Assistant Attorney General
        Environment and Natural Resources Division

By:    */s/ Krishna S. Dighe*
        Krishna S. Dighe
        Senior Counsel
        Environmental Crimes Section
        D.C. Bar No. 979559
        Michigan Bar No. P45376
        150 M Street, N.E.
        Washington, DC 20002
        Telephone: 202-305-1574

By:    */s/ Stephen J. Foster*
        Stephen J. Foster
        Trial Attorney
        Environmental Crimes Section
        VA Bar No. 83893
        150 M Street, N.E.
        Washington, DC 20002
        Telephone: 202-305-4682

DATED: September 3, 2024

CERTIFICATE OF SERVICE

On this 3rd day of September 2024, a copy of the foregoing was served on counsel of record for the Defendant via the Court's Electronic Filing System.

/s/ Stephen J. Foster
Stephen J. Foster
Trial Attorney
Environmental Crimes Section
VA Bar No. 83893
150 M Street, N.E.
Washington, DC 20002
Telephone: 202-305-4682